## Central Coal and Iron Co. v. Owens.

(Decided February 2, 1911.)

### Appeal from Muhlenberg Circuit Court.

1. Where, though the facts are undisputed, reasonable men may draw different conclusions from the facts, the question of negligence is for the jury; not for the court.

2. Where the driver in a coal mine jumped from his car to avoid a collision, and was mashed between the car and the rib of the entry by reason of the narrowness of the entry, it is a question for the jury whether the narrow entry was a reasonably safe place for the work assigned the servant.

3. The master cannot complain that the servant drove in front who was ordered to drive behind, when in driving in front at the time, he followed a custom of the business, and did what he was expected to do under the custom.

R. Y. THOMAS, JR., for appellant.

T. O. JONES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

George Owens was in the employment of the Central Coal and Iron Company as a driver in its mine taking out with a mule cars of coal from the room in the mine to the main lye-way. Another driver by the name of Snyder was engaged with him in the same entry. Their method of doing the business was to hitch the mule to two cars and take out two cars at a time, one following the other. Between the point where they started and the point to which they were to take them, a heavy curtain was placed across the entry and in going out with the coal, they had to go under the curtain which was pushed up by the mule's head and fell into position again after the cars passed. At the time in question Snyder was in front with two cars, and Owens was following with two

cars in the usual way. When Owens got under the curtain so that he could see beyond he learned that Snyder's cars had jumped the track just after passing the curtain, and fearing that his cars would run against the derailed cars and he would be mashed between them, he jumped off the car. The entry at this point was too narrow to admit the body of a man between the car and the side of the entry, and so he was rolled by the car against the side of the entry and was hurt. He brought this suit to recover for his injuries, and having recovered a verdict and judgment for $250, the company appeals.

The chief complaint on the appeal is that the court should have instructed the jury peremptorily to find for the defendant. The evidence is clear that Owens could not see until he passed the curtain which had fallen down after Snyder's cars passed under it. When his mule's head raised the curtain he saw the light of Snyder's lamp and heard Snyder holler. He was then too close to Snyder's cars to stop his cars before they would collide with them; he was sitting on the front of his car just over the mule so as to drive him and if his car collided with the other car while he was sitting there, there was danger that he would be hurt in the collision, so he jumped off to save himself. What happened after he jumped off was that the mule, seeing the danger, ran to the side, and the cars came together. Snyder's cars being derailed, left a space at one side into which the mule got, but whether Owens should have waited and taken the chance of thus saving himself or should have jumped when he saw the danger in which he was placed, was a question for the jury. The court in substance told the jury that if the defendant's entry at the place complained of was not wide enough to be a reasonably safe place for the plaintiff to do the work which he was employed by the defendant to do, that the track in the entry became obstructed, and there was danger of the car on which the plaintiff was riding coming into collision with the obstruction, and that an ordinarily prudent person situated as the plaintiff was would have jumped as the plaintiff did, and the plaintiff in so jumping was caught between the rib of the mine and the car and thus injured, they should find for the plaintiff. It is insisted that the instruction should not have been given under the evidence, and that there was no evidence of negligence on the defendant's part. It is shown by the evidence that the entry ordinarily is seven feet wide; that the cars

take up four feet, leaving a space of one and a half feet on each side of the cars as they run along. There is also proof that the curtain was six feet wide, and the proof tends strongly to show that the entry was narrowed near the curtain so that the curtain would fill the space. The curtain rested upon a frame which extended out into the entry and left a clear space of less than six feet, as the curtain rested upon the frame. In running these cars accidents occasionally happened. It was incumbent upon the defendant to use ordinary care to make the entry reasonably safe, and if this entry was narrower than it should have been, this could have been discovered by ordinary care. It was a question for the jury whether a narrow place like this was a reasonably safe place for the servant to work, considering the fact that he at times would be called upon to get off his car, and the fact that his life would be placed in peril whenever he had to leave his car if there was no space at the side between the car and the rib of the mine into which he could safely get. Although the facts are undisputed, still, where the conclusion to be drawn from the facts is one on which reasonable men may differ, the question is for the jury. We can not say that there is no room for a difference of opinion among reasonable men as to whether a narrow place in an entry like this was a reasonably safe place for the servant to do the work assigned to him, especially in view of the presence of the curtain, the evidence that there was an intersection near by, that the track there was not properly gauged and that the cars often jumped the track along there.

It is also insisted for the company that Owens was directed by its foreman that morning to drive in front of Snyder; that if he had obeyed orders and driven in front, he would not have been hurt, and so can not recover. But this was not pleaded. He showed that his mule balked, and that he and Snyder then changed places, Snyder going in front because a mule will frequently follow when he will not work in the lead, and this was customary in the mine. Under the custom as shown, they evidently did what would have been expected of them by the foreman under the circumstances. And if Owens had been in front, precisely the same thing would have happened to Snyder as happened to him; the company was in no way prejudiced by their changing places, when it became necessary by reason of the balking of the mule.

Judgment affirmed.