### Interstate Coal Co. v. Fannon.

(Decided November 1, 1911.)

Appeal from Knox Circuit Court.

1.  Master and Servant—Coal Mines.—It is the duty of the master or mine owner in constructing the track in the coal mine to make it reasonably safe for drivers in the mine in the discharge of their duties, and while exercising ordinary care for their own safety.

2.  Master and Servant—Duty of Master.—The master is not bound to provide for his servant instrumentalities that are absolutely safe, but he must provide for them instrumentalities reasonably safe; that is, the master must use ordinary care in providing these instrumentalities, and make them as safe as ordinary care would make them.

3.  Damages.—Where the servant was caught between the car and the wall of the mine, on a curve of the track leading from the

entry to the main track, and was slightly injured by being bruised and skinned, but had no bones broken, and received no apparent permanent injuries, a verdict for $600.00 damages is excessive and will be set aside.

BLACK, GOLDEN & OWENS for appellant.

JESSE D. TUGGLE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellee sued the appellant and obtained a verdict and judgment for $600.00 for injuries which he claimed he had received while engaged as a driver in the coal mine of the appellant. He alleged that while he was so engaged driving a mule attached to a car hauling coal out of the mine, he was injured by reason of the fact that the appellant had negligently constructed and maintained said track so close to the rib or wall of the entry that there was not sufficient space between the car and the rib to afford a reasonably safe place to perform the duties required of him as a driver. Appellee was engaged in mining coal in entries right 4 and 5 under a contract for a given sum per ton. He had several men working for him and under his separate employment. It was the duty of the appellant to remove the coal from the entry as soon as it had been mined, and in this way to clear the entry for the men to continue their work. On the day of the injury several of the company's drivers failed it, so that it was not able to promptly remove the mined coal from the several entries. Appellee being dissatisfied with the way things were going, went out to the entrance of the mine and procured a mule and car, and began hauling the mined coal from his two entries, he himself acting as the driver. After he had made one trip, he says that McDonald, the bank boss on the outside, told him to take the car and mule and remove the mined coal from entry right 3, which he proceeded to do. Appellee had not been working in entry right 3, and he had nothing to do with the coal mined there. He loaded the car in entry right 3, and in going out of that entry on to the main track, the car necessarily moved upon a track which curved to the left and within about eight inches of the rib or wall of the mine. While the car was passing along this curve, appellee passed rapidly to the front in order to "sprag" or check the car in its speed so as to prevent it from running against the mule, and in doing so he was

caught, as he claims, between the car and the rib or wall of the mine and injured. There was no other witness to the accident. On the opposite side of the track there was a space of eight or ten feet; and it is contended by appellant that appellee was guilty of negligence in attempting to go through the narrow space upon the inside of the curve when he could as easily have gone on the outside. The only light he had was the miner's lamp in his cap. Bennett, the superintendent of drivers for appellant, testified that appellee told him the mule had kicked at him, thereby causing his lamp to fall off, and that in attempting to recover his lamp he was injured. Another witness testified that when appellee came back after his injury, to have his coal measured and to receive his pay, he said to the witness that if the company did not treat him right about the measuring of his coal, he would sue it for the injury he had sustained.

There is no substantial objections to the instructions given to the jury. The court instructed the jury that it was the appellant's duty to furnish a reasonably safe place for the appellee to work in, and followed substantially the first instruction given in Daniel Boone Coal Co. v. Sisk, 30 Ky. L. R., 958, 99 S. W. 977. The court also instructed the jury as to contributory negligence upon the part of the appellee; that the appellant was not an insurer of the safety of the appellee while in its service as driver, but that he, in undertaking that work, assumed the ordinary risks incident to the service; and, that if he voluntarily left his own employment without the directions of the appellant, and took the mule and car to haul coal from the mine to further his own purposes, the verdict should go for the appellant. These instructions were proper under the facts of this case, when viewed in the light of the following language taken from the Sisk case above referred to:

"The master constructed the entry and the track in it, knowing the space that would be left between the car and the rib. If the entry thus constructed was not reasonably safe to drivers in the mine when in the discharge of their duties and while exercising ordinary care for their own safety, then ordinary care had not been used in its construction. The master is not bound to provide for his servants instrumentalities that are absolutely safe, but he must provide for them instrumentalities reasonably safe; that is, the master must use ordinary care in providing them or make them as safe as ordinary care would make them. If only a space of eight inches was

left between the car and the rib at the side on which the driver would walk there would manifestly be danger that the driver in the dark who did not know the situation would be caught by the car. If the space was not such as to make the entry reasonably safe for the use of the driver then in a case like this, ordinary care was not used by the master."

See also, Main Jellico Mountain Coal Co. v. Parker, 124 S. W., 871, and Central Coal & Iron Co. v. Owens, 142 Ky., 19.

It is insisted, however, that although the jury found that the injuries were received in the manner claimed by appellee, and not is the way claimed by appellant, that they were, nevertheless, trivial, and that the verdict is, under the circumstances, excessive. After a careful reading of the testimony we have reached the conclusion that the evidence as to appellee's injury, and the extent thereof, is quite unsatisfactory, and does not sustain the verdict. According to appellee's own testimony, after he was hurt he went out to the entrance of the mine where he stayed for a short time; he then went back and put the "sprag" in the car, and then went outside again leaving the mule hitched to the car at the point where the accident had occurred. He says that he subsequently rode away from the mine upon the mule that he had left in the mine. He stayed at his boarding house near-by for a day or two, and then went to his father-in-law's home, where he remained for quite a while. Appellee says he went back to the mine in two or three months to have his coal measured up, while Bennett, appellant's bank superintendent, says he came back for that purpose within a week or two.

As to the extent of his injury, appellee admits that it was confined principally to his hip and back, which were skinned. He claims that he was not able to do any work for four months, having spent three weeks on crutches, and that he has not since been able to do a man's full work. Bennett saw appellee shortly after the injury, and could find no injury more severe than two skinned spots upon his hips. No bones were broken and the physician who attended appellee, has not testified. Clearly the verdict is, under the evidence, so excessive that it must be set aside.

Upon the whole, we are constrained to hold that the appellee has not been permanently injured.

Reversed and remanded for a new trial.