John **WEINBERGER**, Appellant,

v.

Patrice **WEINMEISTER**, Appellee.

No. S–14036.

Supreme Court of Alaska.

Jan. 20, 2012.

---

Rhonda F. Butterfield, and Mitchell K. Wyatt, Anchorage, for Appellant.

Patrice Weinmeister, pro se, Anchorage, Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

John Weinberger and Patrice Weinmeister are the parents of a young son. After an incident of mutual domestic violence, John obtained an ex parte restraining order against Patrice under AS 18.66.110. John and Patrice both sought custody of their son in the separate custody proceeding that followed. After a one-day bench trial, the superior court determined that Patrice had a history of perpetrating domestic violence, but nonetheless awarded her sole legal and primary physical custody. John appeals the custody decision.

## II. FACTS & PROCEEDINGS

John Weinberger and Patrice Weinmeister began living together in early 2008. They are the parents of a son born in August 2009. Both John and Patrice have children from previous relationships, and both claim that the other committed domestic violence while they resided together.

John testified that Patrice physically abused him on multiple occasions in May 2010. He claimed that, in early May, Patrice pushed him off of a sidewalk into bushes, on May 12 she slapped him across the face, and on May 17 she shoved him over a couch. John also alleged that during an argument on May 17, 2010, Patrice jumped into his car and bit his arm, leaving marks and bruises.[1] Patrice denied biting John, but she agreed

---

1. Photographs of the marks on John's arm were admitted at the parties' custody trial.

that she reached into the driver's side window or door of his car to grab some papers away from him. She testified that while she was reaching into the car, John accelerated the vehicle and she was dragged down the driveway, injuring her legs.

It is undisputed that John called the police after the incident that occurred in the driveway and Patrice was arrested. John filed for and was granted an ex parte domestic violence protective order the next day. The order directed Patrice not to contact John or return to their family home. It also granted John and Patrice joint temporary custody of their son.

John initiated an action for custody in the superior court. He also requested a hearing on his motion for a long-term protective order under AS 18.66.100(c). The superior court extended the ex parte domestic violence protective order pending a hearing on the long-term order. After the hearing, the superior court denied the motion for a long-term order but entered a mutual "no contact order" in the parties' custody case.

A one-day custody trial was held in September of 2010. At the conclusion of the trial, the superior court found that Patrice had a history of perpetrating domestic violence.[2] It also found that by accelerating the car and dragging Patrice, John committed a single act of domestic violence. Because the court found that John's actions "[fell] short of a single act of domestic violence leading to serious physical injury," the court did not conclude that John had a "history of perpetrating domestic violence" under AS 25.24.150(h).

The superior court ruled that Patrice rebutted the statutory presumption in AS 25.24.150 against awarding custody to a parent with a history of perpetrating domestic violence. The court's custody order awarded Patrice sole legal custody until the parties' son turns five, at which point the parties will exercise joint legal custody. Patrice was granted physical custody five days per week; John was granted two overnight visits per week until their son turns three. John is to receive three nights of visitation after the child turns three and, after the parties' son turns four, the order provides for equal physical custody. The superior court ordered Patrice to participate in a 12–week domestic violence batterers' intervention program and recommended that John attend an infant parenting class.[3]

John appeals.

## III. STANDARD OF REVIEW

The superior court has "broad discretion to determine custody awards so long as the determination is in the child's best interests."[4] We "will not reverse a superior court's custody determination unless it abused its discretion or its controlling factual findings are clearly erroneous."[5]

The superior court abuses its discretion when it "considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[6] "Factual findings are clearly erroneous if a review of the entire record leaves us 'with a definite and firm conviction ... that a mistake has been made.'"[7]

"The interpretation of a statute is a question of law to which we apply our independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the

---

**2.** Under AS 25.24.150(h), a parent who has either "engaged in more than one incident of domestic violence" or caused serious physical injury during a single incident of domestic violence has a "history of perpetrating domestic violence."

**3.** John's older child resided with the parties at least part of the time they lived together. Patrice testified at the parties' custody trial about incidents in which she found John's parenting skills to be lacking.

**4.** *Misyura v. Misyura,* 242 P.3d 1037, 1039 (Alaska 2010) (quoting *Thomas v. Thomas,* 171 P.3d 98, 102 (Alaska 2007)).

**5.** *Id.* (quoting *Thomas,* 171 P.3d at 102).

**6.** *Id.*

**7.** *Id.* (quoting *Jenkins v. Handel,* 10 P.3d 586, 589 (Alaska 2000)).

statute's language, its legislative history, and its purpose." [8]

## IV. DISCUSSION

### A. Patrice Failed To Rebut The Presumption In AS 25.24.150(g).

■ In AS 25.24.150(g), the legislature established a rebuttable presumption against awarding custody to "a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner...." As explained, "a parent has a history of perpetrating domestic violence ... if the court finds that ... the parent caused serious physical injury or ... engaged in more than one incident of domestic violence." [9] Here, the superior court found that Patrice had a "history of perpetrating domestic violence" because she engaged in more than one instance of domestic violence, but the court also ruled that Patrice rebutted the presumption against awarding custody to her.[10] John contends the superior court's determination that Patrice overcame the presumption was based on a misreading of AS 25.24.150(h). We agree with John.

Alaska Statute 25.24.150(h) provides:

The presumption [in AS 25.24.150(g) ] may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, *and* that the best interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or

because of other circumstances that affect the best interests of the child.[11]

John argues on appeal that the superior court read this statute with "or" between the conditions for rebutting the presumption, rather than "and." In other words, rather than reading the statute to require consideration of a batterers' intervention program (if such a program was available), *and* a showing that Patrice does not engage in substance abuse, *and* a showing that the child's best interests would be served by awarding custody to her, John argues that the superior court interpreted the statute to allow the presumption to be overcome if Patrice made any *one* of the three showings identified in the statute. John argues that Patrice did not overcome the presumption against awarding custody to her because she had not completed a batterers' intervention program as of the time the superior court entered its custody order. John argues that the superior court's award of custody to Patrice was error.

■ We agree with John that the path charted in AS 25.24.150(g)-(h) is not optional.[12] We also agree that the legislature used "and" when it identified the findings that must be made under .150(h) to overcome the presumption against awarding custody to a person with a "history of perpetrating domestic violence." Here, the superior court found that Patrice had not engaged in substance abuse and that it was in the child's best interest for Patrice to be awarded custody. But there was no finding addressing whether: (1) Patrice had "successfully completed an intervention program for batterers"; (2) such a program was "reasonably available" to Patrice; or (3) Patrice had otherwise undertaken steps that allowed her to rebut the statutory presumption against

**8.** *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.,* 189 P.3d 1032, 1036 (Alaska 2008) (citing *Parker v. Tomera,* 89 P.3d 761, 765 (Alaska 2004)).

**9.** AS 25.24.150(h).

**10.** The superior court determined Patrice engaged in more than one incident of domestic violence because she pushed John over a couch, shoved John off of a sidewalk into bushes, and bit John's arm.

**11.** Emphasis added.

**12.** *Stephanie F. v. George C.,* 270 P.3d 737, 753, 2012 WL 163904 (Alaska 2012) ("path charted" language "only means that the rebuttable presumption cannot be ignored by the superior court, [but] it does not speak to the proof that is needed to rebut the statutory presumption," and holding completion of a batterers' intervention program is not the only way to rebut the presumption in AS 25.24.150(g)).

awarding custody to her.[13] The superior court ordered Patrice to complete a "12 week domestic violence batterer's intervention program." We find no error in this order,[14] but at the time the court entered its custody order, Patrice apparently had not taken steps to satisfy .150(g)'s requirement that her history of domestic violence be addressed in order to overcome the presumption against awarding custody to her. Because Patrice failed to rebut the statutory presumption, the superior court erred by awarding custody to Patrice[15] and the custody order must be reversed.[16]

## B. It Was Error To Apply The Tender Years Doctrine When Assessing The Child's Best Interests.

■ John also argues that the superior court abused its discretion by relying on the "tender years doctrine" in its custody determination. Patrice counters that the superior court properly assessed all relevant factors when it evaluated the child's best interests. Having reviewed the record, we agree with John that the superior court impliedly invoked the tender years doctrine; it was error to do so.

In *Faro v. Faro*, we defined the tender years doctrine as the presumption that, "other factors being equal, a mother will be given preference for custody."[17] In *Johnson v. Johnson* we abandoned the use of the tender years doctrine in custody determinations, explaining "[t]he real issue is not the sex of the parent but which parent will do better in raising the children."[18] Alaska Statute 25.24.150(c) instead requires courts to examine the child's best interests without regard to the gender of the parent seeking custody or visitation.

In this case, the record shows the superior court considered several pertinent factors to determine the best interests of the child in accordance with AS 25.24.150(c). But some of the superior court's comments signal that it improperly favored Patrice over John because Patrice is the child's mother.[19]

■ We reaffirm our precedent holding that a presumption in favor of the mother is an improper basis on which to award custo-

---

**13.** *Cf. id.*

**14.** John argues the superior court abused its discretion by failing to require Patrice to complete a batterers' intervention program approved by the Department of Corrections. But John points to no authority requiring the superior court to order a program approved by the Department of Corrections upon the entry of an ex parte protective order under AS 18.66.110 or as a condition of a custody order. John cites 22 Alaska Administrative Code (AAC) 25.010 (1998), which requires Department of Corrections approval when batterers' programs are "imposed as a condition of probation under AS 12.55.101(a), as a condition of a [long term] protective order under AS 18.66.100(c), or as a condition of parole under AS 33.16.150(f)." But Patrice was not on probation or parole and John's request for a long-term protective order was denied. The superior court ordered Patrice to complete a batterers' intervention program pursuant to AS 25.24.150(c), not AS 18.66.100(c). We find no error in the order requiring Patrice to attend a 12–week batterers' intervention program.

**15.** *See Wee v. Eggener*, 225 P.3d 1120, 1125 (Alaska 2010) ("[W]ithout a finding that [the parent who has a history of perpetrating domestic violence] overcame the presumption against custody, [that parent] has no right to any type of custody.").

**16.** John makes the alterative argument that the superior court incorrectly applied the supervised visitation standard to make the custody determination. Because we reverse the custody order on other grounds, we do not reach the supervised visitation argument.

**17.** 579 P.2d 1377, 1379 n. 3 (Alaska 1978) (citing *Wetzler v. Wetzler*, 570 P.2d 741, 742 (Alaska 1977)).

**18.** 564 P.2d 71, 75 (Alaska 1977) (quoting *In re Marriage of Bowen*, 219 N.W.2d 683 (Iowa 1974)).

**19.** For example, the superior court stated:

[Patrice] has shown a capability and desire to meet those needs because, you know, let's face it, it's partly genetic and biological and ... [t]hey get kicked in the tummy and ... bond in a primarily different way sometimes than men and she's got that desire and bond and often, men have less of a bond and they have to come to it and they do to a greater or lesser extent.

The superior court also stated:

[Patrice] desperately loves this little boy and so has to take care of him and [John] loves the little boy too in a different way, in an appropriate way ... the appropriate male love by a person who is not the primary psychological parent.

dy.[20] On remand, a custody order should be entered without consideration of the tender years doctrine.[21]

### C. The Superior Court Did Not Fail To Consider The Domestic Violence Exception In AS 25.24.150(c)(6).

■ John argues that the superior court abused its discretion by failing to apply the domestic violence exception under AS 25.24.150(c)(6). Patrice argues that the court properly weighed all relevant factors under AS 25.24.150(c), that the court found both parties committed domestic violence, and that the domestic violence exception also applied to both parties. We agree with Patrice.

■ In determining a child's best interests, the superior court must consider all the statutory factors set out by the legislature in AS 25.24.150(c).[22] We review "the adequacy of findings for 'whether they give a clear indication of the factors considered important by the trial court or allow us to determine from the record what considerations were involved.' "[23] "The superior court need not discuss each of the factors; it must only address those that are 'actually relevant in light of the evidence presented.' "[24]

■ The domestic violence exception under AS 25.24.150(c)(6) requires that where a parent "engaged in domestic violence," and continuing a relationship with that parent will "endanger the health or safety of either the parent or the child," the court shall not consider the other parent's "willingness and ability" to "facilitate and encourage a close and continuing relationship between the [perpetrating] parent and the child." This exception does not require a finding that a parent has "a history" of domestic violence as defined by AS 25.24.150(g). Rather, the exception applies anytime the court finds that a parent "engaged in domestic violence" and continuing a relationship with that parent will "endanger the health or safety of either the parent or the child."

As noted, the superior court found that John committed domestic violence "by accelerating the vehicle when [Patrice] was attempting to get papers out of the vehicle ... caus[ing] physical damage to her legs." The superior court also found that Patrice had a history of perpetrating domestic violence. Accordingly, AS 25.24.150(c)(6) potentially applied to both parents, but the court did not find that continuing the relationship with either parent would "endanger the health or safety of either the parent or the child." Contrary to John's argument that this exception was overlooked, the superior court expressly considered AS 25.24.150(c) and found that both parties "match each other in [their] weakness" at fostering a relationship with the other parent. The record supports this finding. We see no error in the superior court's consideration of AS 25.24.150(c)(6).

### D. John Was Not Denied An Opportunity To Object To The Superior Court's Findings Of Fact And Conclusions Of Law.

■ John argues that he was denied due process because he was not allowed five days to object to the superior court's proposed findings of fact and conclusions of law before they were entered. The record supports John's contention that he did not have five days to object to the proposed findings and conclusions—as required by Civil Rule 78(b)—but the superior court did allow the parties to submit written objections and argue their objections at a separate hearing. Moreover, we have held that "[n]on-compliance with subdivisions (a) and (b) of Rule 78 does not in itself require us to reverse the judgment below and order it to be set aside. The appellant must first show that [he] has

---

20. *Johnson*, 564 P.2d at 75.

21. John also contends that the superior court violated his due process rights by discriminating against him based on gender. We take this gender-discrimination claim to be part of his tender years claim and address these claims jointly.

22. *Thomas v. Thomas*, 171 P.3d 98, 102 (Alaska 2007).

23. *Id.* (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997)).

24. *Id.* at 102–03 (quoting *Virgin v. Virgin*, 990 P.2d 1040, 1045 (Alaska 1999)).

been prejudiced in some substantial way." [25] Because John was given an opportunity to object to the superior court's findings and conclusions after they were entered, and because he did not show that he was prejudiced by the failure to permit a five-day objection period before the findings and conclusions were entered, we discern no due process violation.

## V. CONCLUSION

We REVERSE the custody determination and REMAND for proceedings consistent with this opinion.

**25.** *Anchorage v. Chugach Elec. Ass'n,* 394 P.2d 673, 675 n. 3 (Alaska 1964) (quoting *Briggs v. Kelly,* 376 P.2d 715, 717 (Alaska 1962)) (internal citations omitted).